Good morning, Your Honor. My name is Jamie Lefkowitz, and may it please the Court, I'm here today on behalf of Petitioner Santos Noel Benitez, and I respectfully reserve two minutes time for rebuttal. Your Honors, I ask the Court today to hold like it did similarly in Watkins v. INS, Kalilu v. Mukasey, and Singh v. Holder, that the Board erred and abused its discretion in denying the Respondent's October 2014 motion to reopen to pursue a provisional unlawful presence waiver before USCIS. Your Honors, the Board cited two reasons for its denial. The first of which is that the Respondent is not eligible for said waiver because he is under a final order of removal. The second is that there is no provision in the regulations allowing for proceedings to be reopened and then administratively closed so that an alien who has a final order will qualify for such a waiver. Your Honors, I would submit that both reasons are at odds with circuit precedent, like again in Watkins, and with relevant regulations, but most importantly, they simply make no sense. To say that the Board will not reopen because of Petitioner's final order of removal ignores the very premise of what a motion to reopen purports to accomplish. Well, let's begin with the proposition. Isn't it the case that the regulation says that, in fact, the relief sought by your client isn't available if there's a final order of removal in place? Correct. So you're asking us to, in effect, read the regulation out by saying, well, that doesn't really count because you can just set aside the final order of removal because you're asked to, the BIA is asked to. Well, not necessarily, Your Honor. What we're asking the Court to consider more so is the point of what a motion to reopen is, which, again, would cancel that order of removal. Even if this were reopened, wouldn't your client be ineligible for the waiver because of his criminal conviction for a crime involving moral turpitude? No, Your Honor. We believe that under the regulations, INA 212, which I believe the waiver qualifies under for inadmissibility purposes, that would be a 212A9BV, that his criminal history has no bearing as far as his inadmissibility. That part would be discretionary when he's submitted for his interview with the consulate. I'm not sure I understand that because my understanding is that the waiver, the 601A waiver regulation in its preamble talks about why the regulation doesn't allow for the waiver when there is a final order of removal. And the explanation given is that people may have crimes that led to that final order of removal, and they list a bunch of provisions, and one of them is the provision for crimes involving moral turpitude. So it seems like it's very much intended that you not get a 601A waiver if you have a crime involving moral turpitude. As far as the crimes go, Your Honor, the crime that the court is referring to would be the criminal threat, which, because of the sentence involved in that matter, would fall under the petty offense exception. So, again, other than discretionary grounds, there is no statutory bar, criminally speaking, for the petitioner to apply but for his final order of removal. So my reading was that the I.J. thought that your client had an offense involving moral turpitude, and I didn't read your brief as contesting that. Can you explain? I'm not sure that this issue that you're arguing now is something that I saw really in the papers. Your Honor, at the immigration court level, the respondent at the time had sought cancellation of removal and temporary protected status. As far as his removability went under INA 237, yes, both of those crimes in conjunction with one another barred him from that relief. That was in November of 2012. The provisional unlawful presence waiver, the I-601A program, came out in March of 2013, which spawned the motion to reopen to the board specifically for that purpose. But has anything changed in his convictions or the sentences he received? They both actually have been expunged pursuant to 17B motions. They are also on appeal for a violation of California Penal Code 101-6.5 for the judge's failure to read the immigration consequences. But as far as the eligibility for the waiver ---- Wait, so they've been expunged but they're also on appeal? Could you explain what the posture is of these criminal convictions? Well, they've been expunged. That doesn't really solve the problem for immigration purposes. Expungement, I don't believe, does for the cancellation and TPS. It would need to be vacated as far as being able to avail that post-conviction relief in the case of TPS and cancellation. Again, for purposes of the waiver, which is what the basis of the motion to reopen was, the respondent or petitioner was simply asking for the board to review the factors that he had presented, all of the relevant factors that he had presented there, in order to determine, but for his final order, whether he qualified. There's been ample amounts of cases both before the board and this court that establishes criteria taking into account, of course, that there's a motion to reopen. And again, going back to the court in Watkins, what it had said there was that the board's denial for the sole reason that the petitioner appealed her deportation order was an abuse of discretion. It was arbitrary, irrational, and capricious because every motion could be denied on these grounds. Watkins went on to cite Israel v. INS, which is a Ninth Circuit case from 1986, which said something similar. It reversed the board's refusal to reopen because again, and I quote from that case, the board failed to cite a single adverse factor relevant to its exercise of discretion in considering that motion, except for the fact that she had previously been found deportable, which would be true of any alien filing a motion to reopen. That is the issue before the court today. Whether the board used circular reasoning in coming to the conclusion that his final order bars him from the waiver. And again, I submit that that's the reason we asked the motion. We asked for the motion to reopen. Otherwise, we would have directed our request to USCIS, who is the agency that will eventually adjudicate the I-601A. But we can't do that with a final order of removal. Well, by your reading, any statute or regulation that says this relief is not available to somebody who is subject to a final order of removal would be ineffective. Well, again, have the board. I mean, isn't that the case? Because you're basically saying it could be set aside if the board decides to set it aside. So that means Congress can't write a statute that says that. Congress certainly can. But Congress also created 8 CFR 103.2, which said that the board can reopen for any reason it so chooses. Which is the point, again, of submitting a motion to reopen is to consider the other relevant factors, given that he's a final order. And again, I would submit that there was ample evidence to suggest that but for this final order, he would have qualified. Not that we were asking the board at the time to make an assessment as to whether he would qualify, but simply whether he should be allowed to apply to U.S. citizens. But doesn't it matter a lot whether he actually would qualify? I'm still not sure I'm understanding. There are a lot of provisions here, so perhaps this petty offense exception somehow gets him to qualify. But I don't quite understand yet how he qualifies, given his criminal convictions. Well, certainly. And the board in Vallarde-Pacheco did set out a list of criteria in order to assess prima facie eligibility. But they don't specifically get into the merits of the application that they can adjudicate. All they assess, essentially, is whether the motion was timely filed, whether it was supporting evidence to that effect, and whether it appears, at least on the face of those documents, that this individual has a chance. Right. And so, I mean, the chance needs to be a colorable chance, right? And so how is your client going to qualify even if he gets reopening? Well, Your Honor, he has a U.S. citizen wife. He has three U.S. citizen children. The hardship is ample. Had the board, if the board wishes to consider or if the panel wishes to consider that evidence, surely we would again put it forward. Was it put to the BIA as part of the motion to reopen? What was put, Your Honor, was the application and the I-130 approval notice showing that he is prima facie eligible, as well as his conviction records, I believe. I do see that I have one minute left, Your Honors. If there's no further questions, I would like to reserve the remaining time for rebuttal.  Thank you, Your Honors. Good morning. May it please the Court, Sarah Bird for the Attorney General. This Court should deny the petition for review because the board did not abuse its discretion in denying the motion to reopen. First, I'd like to address counsel's argument that the board's reasoning is circular because I don't believe it is. The board held that he's not prima facie eligible for the relief he was seeking, which is not contested. As you noted, the regulation specifically states that an individual with a final order of removal is not prima facie eligible to apply for this provisional 601A. But even if the board reopened, he would still not be eligible because the regulation includes a list of categories of individuals not eligible. One of those categories is those with a final order of removal, but there's another category for those in removal proceedings. So if he reopened, he would jump from one category to the other, but he still wouldn't be eligible. Because of his criminal convictions or because of some other reason? No, not because of his criminal convictions, because of the plain language of the regulation. But the preamble to the regulation talks about why final orders of removal should be respected and gives a list of reasons, including crimes of moral turpitude. So I thought that that was going to be what you were going to argue, but are you not arguing that? No, I agree with counsel that that would go into the petty offense exception. As my understanding, and I haven't looked into it, but my understanding is the maximum punishment is one year, and that would let it. I think with regard to your questions to her, for cancellation of removal, that crime is a bar if it would render him either removable for a crime involving moral turpitude or inadmissible. There are two separate parts of the INA, and the petty offense exception applies in the inadmissibility part, but not in the, it's just one of those quirks to the INA. So the criminal conviction, I agree, would be relevant as to the discretion, but is not a statutory or regulatory bar to apply. So it would be a factor weighed in whether to give the 601A waiver, but not an absolute rule? That's my understanding, yes. That would be something that CIS would weigh, and that ICE would weigh once proceedings are reopened in trying to decide whether they're going to agree to administrative closure. And that brings me back to what I do think would make him ineligible. Even if the board granted the motion to reopen and rescinded the final order of removal, that just jumps him into another category of ineligibility, aliens in removal proceedings. And in the preamble, which you have obviously read, it discusses both categories, because both are explicitly ineligible. And it explains that, as you said, the reasons that they made aliens with a final order of removal ineligible is because the 601A was intended to be a streamlined provision. It was, it's just a separate process for seeking the unlawful presence waiver, and it was intended to be for a narrow category, pretty much the simplest cases. And aliens with a final order of removal often have more complicating factors, like criminal convictions, like other inadmissibility grounds. So those were the reasons they gave to the commenters during the notice and comment process for publication of the final rule for why they were excluding that class. But they also excluded the class of aliens in removal proceedings, with a narrow exception for those whose proceedings had been administratively closed, which is a tool to take it off the active docket. They're still in removal proceedings, but it's off the active docket. There's no calendar date set. So you can anticipate what comes next in this volley back and forth, because the request is going to be there. Well, okay, the only thing that holds stands between me and the waiver I seek is the administrative closure. So just like the BIA is being asked to disregard the final order of removal or set it aside through the motion to reopen, it will be asked to administratively close. Right. But that goes to my point that not only is he currently prima facie eligible, but even if it's reopened, there's still more steps. It's speculative. And this Court has a lot of case law about prima facie eligibility being a prerequisite to motions to reopen. And speculative future eligibility for relief is simply not enough. So, yes, if it were reopened, then hypothetically he could request administrative closure. And the Board has said that there are six factors for an immigration judge to consider in deciding whether to administratively close. That's under matter of the vetician. And, you know, one of those factors is the basis for any opposition. And it's quite possible that ICE might oppose based on his criminal convictions, based on their determination that the case is when they want to move forward, based on the fact that he's already conceded removability. Because then the next step for the 601A waiver, if it gets administratively closed, then he can apply for it. And then if it gets granted by CIS, he has to come back to the Immigration Court and seek termination of proceedings. That's sort of the process for someone in proceedings. They ultimately, not just administrative closure, but termination before they leave the country. And I think that's another important point for this Court to consider, is the 601A provisional waiver is one manner in which an alien can seek a waiver of unlawful presence. But it's not the only one. There's also the normal 601, not 601A, but 601, that's been around for much longer. The 601A was relatively new, it was in, you know, in 2013. But the 601 is the normal process. And in both, the alien has to leave the country in consular process. We're talking about a situation where he's not eligible for adjustment of status here. And that's because he entered without inspection. And although they cite to a lot of adjustment of status cases, those are different, because that's someone seeking relief here. What he's seeking is to leave the country and consular process, go before the Department of State, have an interview based on this approved I-130 visa petition filed by his citizen wife. So no matter what, whether it's the 601A or the 601, he's going to have to leave the country in consular process. And the 601, he is eligible to apply for. The only difference between those two is that the 601A was intended to be a streamlined provision that just reduces the amount of time that the person has to spend outside the country. Which is 10 years, right? It's significant. Is that right? No, that's not right. What it waives is a 10-year unlawful presence bar. But either waiver waives those 10 years. So what's the difference then between the two now? It's the adjudication time. So with the 601A, they get to apply for that waiver while they're here, and then go have their Department of State interview. So the process is the petitioner, the citizen petitioner, files the I-130. If that gets approved, then they make an appointment. They pay some fees and some paperwork and make an appointment with the Department of State to go have that interview overseas at the consular's office. And then if they're eligible for the 601A, the provisional one, they can go ahead and apply for that. And that can get adjudicated before they leave the country. So then when they end up with the Department of State, the Department of State is the one that flags the inadmissibility grounds, like criminal convictions, other inadmissibility grounds. And they will see this unlawful presence inadmissibility that would give rise to the 10-year bar. But then they would see, oh, but there's a provisional waiver. Now, it's provisional. It's not guaranteed, but it just reduces the amount of time. Whereas on the other side, they would have the petition, the I-130 petition. It's approved. They get the Department of State interview, and they go to that interview first. And then the interviewer is going to say, well, you have this unlawful presence that makes you inadmissible. You can apply for this waiver. And then they can apply for that waiver. Now, in his case, because he has a final order of removal, he would have to apply, submit a Form 212 in addition to the 601. And I thought mortgages were confusing. They say it's as complicated as the tax code. But it's just a different order. And according to, in fact, there's been a proposed rule last summer to expand the 601A. It still wouldn't apply to him, but they're expanding it to petitions filed by other family visa categories. And in that, they estimated that it's about a five-month difference, according to their statistics in July 2015 when they published that proposed rule. They said that it takes, for the 601, after the consulate interview, it takes about five months for CIS to, on average at that time, to adjudicate that 601. So the difference here is just a five-month difference. And the whole purpose of the 601A was to be streamlined for the most simple cases. And in this case, as the Board noted, he's simply not prima facie eligible because he has a final order of removal, and the regulation didn't set forth this process. It's not that the Board was saying, as Petitioner seems to argue, that they didn't have authority to consider it. They did consider it, and he simply wasn't eligible. There wasn't a process for what he wanted. My time is up. Thank you. Thank you. Ms. Lefkowitz. Thank you, Your Honors. Your Honors, if I just may quickly point out, as far as the motion to reopen, I would state that whether it's pursuing an adjustment of status or an I-601A, everybody in Singh, Watkins, and Kahlilu pursuing a motion to reopen is speculative, because those cases have yet to be reopened and they're under final orders and don't even qualify for the adjustment, which we're in the exact same position here. Secondly, the difference between five months and one week, I would submit, is lengthy when you have to prove extreme and unusual hardship for a 601A. My client, Petitioner, has young children and a wife here. So five months is a considerable amount of time. With that, Your Honor, again, Petitioner does respectfully ask the panel to find, as it has before, that the Board abused its discretion in going no further in denying the Petitioner's motion to reopen on the grounds of his order of removal, because, again, that is the very point of what the Petitioner was seeking before the Board. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is now closed.
judges: Fernandez, Clifton, Friedland